UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DR. WILLIAM L. MILLER and
JANET G. MILLER,

               Plaintiffs,

-vs-
                                 Case No. 14-
                                 HON.

THOMAS BLASKE and
BLASKE & BLASKE, P.L.C.
                                 Magistrate

               Defendants.
_____/

COURTNEY E. MORGAN, JR. (P29137)
ERIC J. ROSENBERG (P75782)
Morgan & Meyers, PLC
Attorney for Plaintiffs
3200 Greenfield, Ste. 260
Dearborn, MI 48120
(313) 961-0130 / FAX: (313) 961-8178
cmorgan@morganmeyers.com
ejr@morganmeyers.com
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

      NOW COME the above-named Plaintiffs, by and through their attorneys, MORGAN & MEYERS, PLC, and state as their cause of action against the above-named Defendants the following:

    1.     The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest, costs and attorney's fees.

2.      Plaintiff, Dr. Bill Miller, is a domiciliary of the territory of Puerto Rico.

3.      Plaintiff, Janet Miller, is a domiciliary of the territory of Puerto Rico.

4.      Defendant, Thomas Blaske, was and is an attorney, who represented Plaintiffs, and who practices in the City of Ann Arbor, County of Washtenaw, State of Michigan.

5.      Defendant Blaske & Blaske, P.L.C. is a professional domestic limited liability company owned by Defendant Blaske, and registered in the City of Ann Arbor, County of Washtenaw, State of Michigan. This Defendant does business in the City of Ann Arbor, County of Washtenaw, State of Michigan.

6.      At the time of the malpractice, Mr. Blaske was an employee, as well as registered agent, of Blaske & Blaske, P.L.C.

7.      The acts and occurrences which form the basis of this Complaint occurred in Washtenaw County, Michigan.

8.      Jurisdiction is proper under 28 USC § 1332(a)(1), since the parties are citizens of different "States," as defined under 28 USC § 1332(e), and the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorney's fees.

9.      Venue is proper under USC § 1391(b)(1)&(2), since Mr. Blaske is a resident of this judicial district, and Blaske & Blaske, P.L.C. is registered in this judicial district.  This district is also the location of the acts and occurrences which form the basis of this Complaint.

10.    Plaintiffs have been harmed by the professional negligence of Mr. Blaske, their attorney at the time, far above the jurisdictional requirement of $75,000, as shown in Exhibit 1, a complaint previously filed by Mr. Blaske on Plaintiffs' behalf which details the significant damages. (Ex. 1)

11.    Details of the property dispute that resulted in the legal malpractice here are summarized by Mr. Blaske himself in his January 17, 2011 Complaint filed on Plaintiffs' behalf against Jack Boyko, the attorney who advised Plaintiffs during the purchase of the Twin Oaks property which became the subject of the legal malpractice suit filed by Mr. Blaske. *Id.*

12.    In or about March 2009, Plaintiffs retained attorney John Kline to resolve a number of property-related issues with their neighbors, the Wensels, on the advice of their realtor, Nancy Bishop.  On March 17, 2009, Mr. Kline contacted Mr. Wensel's representative by letter in an attempt to resolve the conflict between their respective clients.

13.    In response to Mr. Kline's letter, Elisha Fink, attorney for the Wensels, responded with a March 18, 2009 letter, stating "There is a question whether the driveway easement still exists. The original easement . . . expired by its own terms in 2006." (Ex. 2)

14.    It was this letter that was ultimately relied on by a state court judge, in ruling that said letter triggered a discovery statute of limitations period. (Ex. 3)

15.     On August 10, 2012, a state court judge granted summary disposition in favor of Boyko on statute of limitations grounds, based upon the above mentioned March 18, 2009 Fink letter. *Id.*

16.     On March 27, 2009, Plaintiffs withdrew from representation by Mr. Kline, and consulted attorney Jon Frank on May 8, 2009.

17.     Mr. Frank had been working for Plaintiffs since November 2008, when Plaintiffs retained him  regarding another case.

18.     Upon receipt of all client files from Mr. Kline, and in discussions with Plaintiffs on or about May 2009, Mr. Frank properly recognized that Mr. Boyko committed legal malpractice, but incorrectly informed Plaintiffs that the statute of limitations had already passed, meaning Plaintiffs could not state a claim against Mr. Boyko.

19.     Had Mr. Frank exercised the care and caution on behalf of his clients which a lawyer of ordinary learning, judgment or skill would have exercised when confronted by the same or similar circumstances, Plaintiffs would have been informed in May 2009 about the six-month alternative discovery rule and their ability to bring a claim of legal malpractice against Mr. Boyko.

20.     Had Mr. Frank exercised the care and caution on behalf of his clients which a lawyer of ordinary learning, judgment or skill would have exercised when confronted by the same or similar circumstances, a materially different result

would have occurred, in that Plaintiffs would have been promptly apprised in May 2009 by Mr. Frank of their rights under the alternative discovery rule regarding their legal malpractice claim against Mr. Boyko, such that said case would have been timely filed.

21.    In late September 2009, Plaintiffs had a conversation with another attorney regarding the real estate over which Mr. Boyko had given his advice. During this conversation, Plaintiffs learned of the alternative six-month discovery statute of limitation for legal malpractice.   Plaintiffs promptly advised their attorney Mr. Frank of this information.

22.    Mr. Frank had access to the March 18, 2009 letter to Mr. Kline, and should have recognized that this could very well be a trigger date for the six-month alternative discovery rule. (Ex. 3)  Had Mr. Frank exercised the care and caution on behalf of his clients which a lawyer of ordinary learning, judgment or skill would have exercised when confronted by the same or similar circumstances, he would have acknowledged the fact that Plaintiffs were in danger of losing their claim against Mr. Boyko, and that a tolling arrangement should be reached with him in order to preserve Plaintiffs' claim. Had Mr. Frank promptly done so in May 2009, or referred Plaintiffs to another attorney for purposes of pursuing a legal malpractice case against Mr. Boyko, a materially different result would have occurred.

23.     On or about October 4, 2009, shortly after Plaintiffs informed Mr. Frank of the alternative discovery rule regarding their legal malpractice claim, Mr. Frank then referred Plaintiffs to Mr. Blaske for Plaintiffs' legal malpractice claim against Mr. Boyko. Mr. Frank stated to Plaintiffs that he referred most of his legal malpractice cases to Mr. Blaske.

24.     Had Mr. Frank taken the time to review the client files given to him by Mr. Kline, Mr. Frank would have realized that the six-month alternative discovery rule for Mr. Boyko may have ended on September 18, 2009, as the aforementioned easement letter of March 18, 2009 may have acted as the point in time at which Plaintiffs reasonably should have known about Mr. Boyko's malpractice, as ultimately ruled by the state court judge in August 2012. (Ex. 3)

25.     Mr. Blaske and his firm, Blaske & Blaske, P.L.C., claim legal malpractice as one of their four areas of expertise on their firm website. (Ex. 4)

26.     Mr. Blaske has spoken before the Institute for Continuing Legal Education on the topic of "Ethics in Advocacy," showing his expertise in that area. (Ex. 5)

27.     Mr. Blaske has stated, based on his firm's own website, that ethics in advocacy is "a principle which to him defines his role as a lawyer." (Ex. 6)

28.     In October 2009, Plaintiffs agreed to a contingency fee agreement with Mr. Blaske, where Mr. Blaske contracted to "represent (Plaintiffs) in connection

with claims for injuries and/or damages arising out of an . . . event of legal malpractice which occurred in connection with purchase of 9255 Twin Oaks." (Ex. 7)

29.     On October 13, 2009, Mr. Blaske corresponded with Mr. Boyko regarding the claim against him, and entered into a tolling agreement with Boyko and his firm, tolling the statute of limitations beginning on November 2, 2009. (Ex. 8, 9)

30.     Mr. Blaske received all client files relating to Plaintiffs from Mr. Frank in October 2009. Included in that file was the March 18, 2009 letter to Mr. Kline regarding the status of the easement.  Plaintiffs also submitted a copy of said letter to Mr. Blaske himself in June 2010.

31.     On or about November 2010, counsel for Mr. Boyko advised Defendant Blaske of Mr. Boyko's position that the March 2009 Fink letter had triggered the statute of limitations against Mr. Boyko.  Thus, Defendant Blaske was aware of, or should have been aware of, this issue even before serving Mr. Boyko.

32.     In November 2010, Mr. Blaske wrote to Plaintiff advising him of Mr. Boyko's position, and asking why Plaintiff had waited until October 2009 to contact Mr. Blaske.  Plaintiff then specifically explained to Mr. Blaske that Mr. Frank had initially advised him in May 2009 only of the long-passed two-year statute of limitations regarding Mr. Boyko, and not of the six-month alternative

discovery rule. Plaintiff also clarified that upon learning of the alternative
discovery rule in September 2009, and after discussing the matter with Mr. Frank,
he was then referred to Mr. Blaske by Mr. Frank in early October 2009.

33. In spite of the fact that Mr. Blaske was "deeply worried about the statute
of limitations," (Ex. 10) he failed to exercise care and caution in investigating the
client files from the previous attorneys in order to establish when the alternative
discovery rule properly began, and to protect his client from the potentially drastic
effect of the March 2009 Fink letter.

34. Had Mr. Blaske exercised the care and caution on behalf of his clients
which a lawyer of ordinary learning, judgment or skill would have exercised when
confronted by the same or similar circumstances, he would have taken the time to
review the file, and would have recognized that arguably, Plaintiffs potentially
should have known of Mr. Boyko's malpractice after Mr. Kline received the
easement letter of March 18, 2009. Had Mr. Blaske acted in such a manner, a
materially different result could have occurred, in that claims could have been filed
in the alternative against Mr. Frank, in addition to or in the place of claims against
Mr. Boyko, or other steps taken to preserve said claim during the pendency of the
Boyko case.

35. Additionally, had Mr. Blaske exercised the care and caution on behalf of
his clients which a lawyer of ordinary learning, judgment or skill would have

exercised when confronted by the same or similar circumstances, he would have informed Plaintiffs that they still had potential claims against Mr. Frank for legal negligence, as he failed to properly advise Plaintiffs as to the existence of the six-month alternative discovery rule, as well as Mr. Blaske's potential conflict of interest in this regard. Had Mr. Blaske acted in this manner, a materially different result would have occurred. If Mr. Blaske deemed himself "conflicted out" due to his relationship to Mr. Frank, he should have informed Plaintiffs promptly and in writing so that they could have obtained alternative counsel in time to pursue claims against Mr. Frank in addition to or in lieu of claims against Mr. Boyko, or to preserve said claims in the event the claim against Mr. Boyko failed on statute of limitations grounds.

36.     In spite of this, Mr. Blaske, representing Plaintiffs, entered into a tolling agreement for the potential legal malpractice only with Mr. Boyko which lasted over a year until January 2011. (Ex. 11)

37.     On January 17, 2011, Mr. Blaske filed a Complaint for legal malpractice against Mr. Boyko and his firm Day & Sawdey, P.C. only. The Complaint claimed that Plaintiffs first learned about Mr. Boyko's malpractice on May 7, 2009. (Ex. 1)

38.     On August 10, 2012, Judge Christopher Yates granted Mr. Boyko's Motion for Summary Disposition, citing the fact that the six-month alternative discovery rule was triggered on March 18, 2009 after the receipt of the letter from

Ms. Fink as mentioned in paragraph 13, instead of the May 7, 2009 date asserted by Mr. Blaske in his Complaint. (Ex. 3)

39.     While Mr. Blaske worked on Plaintiffs' legal malpractice case, Plaintiffs requested multiple times that Mr. Blaske also name Mr. Frank as Defendants in the case. (Ex. 12, 13)

40.     Despite Plaintiffs' requests to name Mr. Frank as Defendants to the initial legal malpractice suit, Mr. Blaske unreasonably delayed any decision and took no action in this regard.

41.     On December 18, 2009, Mr. Blaske stated that Mr. Frank would be "a good friend" to their malpractice suit against Mr. Boyko, due to his assistance with the case, in an internal memo within Defendant firm Blaske & Blaske, P.L.C. (Ex. 14)

42.     In corresponding with Mr. Frank on February 11, 2010, Mr. Blaske complimented Mr. Frank, stating that "you are a great lawyer." (Ex. 15)

43.     On February 21, 2011, Mr. Blaske wrote to Plaintiffs responding to one of their requests to name Mr. Frank in the legal malpractice suit. Blaske stated that "*at this point*, I do not believe that it is appropriate to do so . . . I do not want to suggest openly or even hint that we *might* bring a case against him for failure to correctly advise you of the legal malpractice statute of limitations.  Certainly at least not until we have his favorable analysis and even testimony on the other

matters which are so important to your success in the case against Mr. Boyko."
(Ex. 12) (emphasis added)

44.     Additionally, Mr. Blaske in the same letter stated the lengthy statute of
limitations for a claim against Mr. Frank "should give us plenty of time to have the
statute of limitations matter as to Mr. Boyko fully resolved before we are
compelled to make a decision about a claim against Mr. Frank." *Id.* Thus clearly,
Plaintiff sought and Defendant gave legal advice on whether and when to sue Mr.
Frank for legal malpractice, clearly creating a duty of reasonable, professional, and
ethical due care to Plaintiff regarding the matter, yet Mr. Blaske did nothing to
preserve Plaintiffs' claim against Mr. Frank.

45.     Finally, with mere days to go before the statute of limitations on Mr.
Frank ran out, Mr. Miller contacted Mr. Blaske again about obtaining a tolling
agreement with Mr. Frank to protect the claim of legal malpractice.

46.     On May 23, 2012, Mr. Blaske responded with the surprising claim that he
"was not engaged to sue (Frank)," and that "I did not agree to undertake that Frank
matter," despite his written statement to the contrary in February 2011. (Ex. 13)

47.     Mr. Blaske's statements in his May 23, 2012 letter to his clients
completely misstates his duties under his contingency fee agreement where he
agreed to "represent (Plaintiffs) in connection with claims for injuries and/or
damages arising out of an . . . event of legal malpractice which occurred in

connection with purchase of 9255 Twin Oaks," to say nothing of his statement in his February 2011 letter. (Ex. 7)

48.     As Mr. Frank was retained to handle issues connected to the purchase of the Twin Oaks property, any claims of legal malpractice against Mr. Frank were indeed part of Mr. Blaske's engagement with Plaintiffs, as also clearly confirmed by his letter of February 2011. (Ex. 12)

49.     Despite the numerous occasions during his representation of Plaintiffs where Mr. Miller requested Mr. Blaske bring a claim of legal malpractice against Mr. Frank, including but not limited to February 2011 (some fifteen months before), Mr. Blaske claimed in May 2012, "It is altogether unreasonable of you to expect that I could or would not do this on such short notice." (Ex. 13)  It is respectfully submitted that fifteen months is not "short notice" at all.

50.     Additionally, in spite of the fact that there was no time to find other representation and bring a claim against Mr. Frank within the statute of limitations, Mr. Blaske told Plaintiffs that "If you wish to move in that direction, please find other legal counsel for that purpose." *Id.* This is the first and only time Mr. Blaske gave such advice to Plaintiffs.

51.     Because Mr. Blaske failed to take the proper care and consideration to communicate honestly, ethically and without conflict of interest with his clients and properly respond to their valid requests, Plaintiffs were denied an opportunity

to bring a rightful claim of legal malpractice against Mr. Frank in addition to and/or in lieu of their ultimately untimely claim against Mr. Boyko.

52.   Had Mr. Blaske exercised the care and caution on behalf of his clients which a lawyer of ordinary learning, judgment or skill would have exercised when confronted by the same or similar circumstances, a complaint against Mr. Frank would have been filed in a timely manner.

53.   Alternatively, had Mr. Blaske exercised the care and caution on behalf of his clients which a lawyer of ordinary learning, judgment or skill would have exercised when confronted by the same or similar circumstances, Mr. Blaske would have promptly informed Plaintiffs of his apparent conflict of interest as to Mr. Frank and of their need to find new counsel at an appropriate time to allow them to obtain new representation and bring a claim against Mr. Frank the statute of limitations ran out.

54.   Alternatively, had Mr. Blaske exercised the care and caution on behalf of his clients which a lawyer of ordinary learning, judgment or skill would have exercised when confronted by the same or similar circumstances, Mr. Blaske would have obtained a tolling agreement with Mr. Frank in order to protect his clients' claims, then informed Plaintiffs that he would not bring suit against Mr. Frank, due to his conflict of interest, or otherwise, and allowed Plaintiffs to obtain new counsel.

55.     Had Mr. Blaske exercised the care and caution on behalf of his clients which a lawyer of ordinary learning, judgment or skill would have exercised when confronted by the same or similar circumstances, a materially different result would have occurred, in that meritorious claims could have been brought against Mr. Frank for compensation over the loss, on statute of limitation grounds only, of Plaintiffs' otherwise meritorious claim against Mr. Boyko, as put forth by Mr. Blaske himself in exhibit 1 herein.

56.     Mr. Frank also failed to exercise the care and caution on behalf of his clients which a lawyer of ordinary learning, judgment or skill would have exercised when confronted by the same or similar circumstances when he told Plaintiffs in May 2009 that they had no standing to sue Mr. Boyko because the two-year statute of limitation had already passed. Mr. Frank failed to research the law, and inform Plaintiffs that they could in fact bring a claim against Mr. Boyko under the six-month alternative discovery rule.

57.     Mr. Frank failed to exercise the care and caution on behalf of his clients which a lawyer of ordinary learning, judgment or skill would have exercised when confronted by the same or similar circumstances when he did not properly investigate Plaintiffs' case to identify that the March 18, 2009 letter to Mr. Kline could be the beginning of the six-month alternative discovery rule.

14

58.     Mr. Frank failed to exercise the care and caution on behalf of his clients which a lawyer of ordinary learning, judgment or skill would have exercised when confronted by the same or similar circumstances when he belatedly referred Plaintiffs to Mr. Blaske to sue Mr. Boyko for legal malpractice even after the six-month alternative discovery window had arguably closed.

59.     Mr. Blaske failed to exercise the care and caution on behalf of his clients which a lawyer of ordinary learning, judgment or skill would have exercised when confronted by the same or similar circumstances when he failed to adequately research Plaintiffs' claim and therefore improperly stated the start of the six-month alternative discovery window, leading to the August 10, 2012 Opinion and Order Granting Defendants' Motion for Summary Disposition which eliminated any malpractice claim Plaintiffs could bring against Mr. Boyko. (Ex. 3)

60.     Additionally, Mr. Blaske failed to exercise the care and caution on behalf of his clients which a lawyer of ordinary learning, judgment or skill would have exercised when confronted by the same or similar circumstances when he neglected to promptly inform Plaintiffs of his intention not to bring suit against his friend and referral source, Mr. Frank, despite Plaintiffs' multiple entreaties, until the last possible moment, and has never informed his clients of his serious conflict of interest in this regard.

61.    Mr. Blaske failed to exercise the care and caution on behalf of his clients which a lawyer of ordinary learning, judgment or skill would have exercised when confronted by the same or similar circumstances when he failed to obtain a tolling agreement with Mr. Frank upon deciding not to bring suit against them, in an effort to maintain Plaintiffs' claims for another attorney to pursue.

62.    Mr. Blaske failed to exercise the care and caution on behalf of his clients which a lawyer of ordinary learning, judgment or skill would have exercised when confronted by the same or similar circumstances when his actions caused Plaintiffs to lose the legal standing to bring proper legal malpractice claims against Mr. Frank due to his negligence, conflict of interest, and failure to properly protect Plaintiffs' substantial legal rights.

63.    The expected business income from Plaintiffs' farm includes all of the following as alleged by Mr. Blaske himself in his filing against Boyko: (Ex. 1)

    a.  Income of $120,000 per year for 20 years from boarding horses ($36,000 per year) and horse shows ($84,000 per year).

    b.  The appreciation of the improved property as a real estate investment estimated to be at least $3,000,000 from the eventual sale.

    c.  The loss of a possible $7,000,000 grant to Plaintiffs' 4G Innovation, L.L.C. from the Center of Energy Excellence (C.O.E.E.) for Hydrogen Production from Renewable Energy (Wind and Solar), Storage and Use in Hydrogen Powered Vehicles. The project would have been run out of the farm property, and would have been commercialized in a business expected to result in what could have been millions of dollars of revenue as early as 2012.

16

    d. Starting in September 2009, after Plaintiffs had moved off the farm, the Federal Department of Energy requested $2 million in grant proposals for a project exactly like that which would have been undertaken by 4G Innovation, L.L.C. under the C.O.E.E. grant. If Plaintiffs had not moved away, it is highly likely they would have received a grant and avoided foreclosure. Because the farm was no longer available as a research facility, all business revenue from any such alternative energy was lost in 2009 and for all future years.

    e. In 2008, Plaintiff Janet Miller founded Cloverfield Publishing, and was going to publish a book including notes and photos from the 2003 through 2006 construction of their farm on the Twin Oaks property. The book, entitled "The Reality of Building a Horse Barn and Farm" was to be published in 2009, and estimated book revenue from 2009 through 2015 was valued at $1 million based on the $50 cost per book and the 20,000 to be printed. Several other works were written about the farm on the Twin Oaks property, resulting in the total loss of revenue for Cloverfield Publishing due to the loss of the property is estimated at $2 million. This includes revenue from consulting about Dexter farm construction and operation.

64.    Moreover, Plaintiffs invested a substantial amount of money, in excess of $1 million, in the purchase of the land and its improvements, and Plaintiffs' have now lost the totality of that investment, and their ability to recoup same due to the actions and inactions of Mr. Blaske, as outlined above.

## COUNT I – NEGLIGENCE – BOTH DEFENDANTS

Plaintiffs hereby reaver, restate and reallege all of the allegations in the preceding paragraphs as if set out in full herein, and further states the following:

65.    At all times pertinent to this Complaint, Defendant Blaske's actions can be attributed to Defendant Blaske & Blaske, P.L.C. through Respondeat Superior.

66.   Defendants owed the Plaintiffs a duty to maintain the standard of care and/or practice as an attorney of ordinary learning, judgment, or skill under the same or similar circumstances, performing all reasonable duties necessary to protect and advance its clients' legitimate interests. Notwithstanding such duty, and in breach thereof: Defendants failed to properly investigate Plaintiffs' claim to determine the correct date of the six-month alternative discovery window. Had Defendants taken proper action, a materially different result would have occurred.

67.   Defendants had a duty to protect Plaintiffs' claims against Mr. Frank, even if Defendants did not intend to sue them. Defendants violated their obligation when they failed to obtain a tolling agreement that would have protected Plaintiffs' claims from the statute of limitations. Had Defendants taken such action, a materially different result would have occurred.

68.   Defendants were negligent in failing to inform Plaintiffs of their refusal to sue Mr. Frank for legal malpractice in a timely manner, in spite of Plaintiffs' well-documented desire to name Mr. Frank in the suit.  This deprived Plaintiffs of their ability to bring otherwise meritorious claims against Mr. Frank.

69.   Defendant Blaske failed to disclose his close relationship with Mr. Frank to Plaintiffs, and also failed to disclose his conflict of interest when Plaintiffs repeatedly requested that Defendant Blaske name Mr. Frank as a Defendant in the

legal malpractice suit brought against Mr. Boyko. This deprived Plaintiffs of their substantial legal rights.

70.     As a direct and proximate cause of the breach of the duty to the client, as well as the breach to the standard of care, Plaintiffs suffered the following damages, including, but not limited to:

    a.  Loss of the opportunity to pursue the underlying legal malpractice claim and the financial loss suffered as a loss of that opportunity;

    b.  Loss of the value of the settlement opportunity;

    c.  Financial loss associated with the loss of investment opportunity had the underlying action been resolved in a timely fashion;

    d.  Loss of the value of the judgment which would otherwise have been entered against the Defendants in the underlying legal malpractice action;

    e.  Emotional distress, mental anguish and anxiety;

    f.  Out of pocket expenses associated with the legal malpractice claims;

    g.  Any and all damages deemed reasonable by the trier of fact.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment against the Defendants in any amount in excess of Seventy-Five Thousand Dollars ($75,000), together with interest, costs and attorney fees, to which the Plaintiffs are deemed to be entitled.

## COUNT II
## VICARIOUS LIABILITY – BLASKE AND BLASKE, P.L.C.

The Plaintiffs hereby restate, reallege, and incorporate by reference each and every allegation set forth above and further state, in the alternative the following:

71.     At all times pertinent to this Complaint, Defendant Thomas Blaske was an ostensible agent, apparent agent and/or employee of Blaske & Blaske, P.L.C. As such, Blaske & Blaske, P.L.C. is vicariously liable for the negligent acts and/or omissions of said employee and/or agent as more fully noted above or as determined through the course of discovery, as well as the damages flowing from said acts and/or omissions as described above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against the Defendant in any amount in excess of Seventy Five Thousand Dollars ($75,000.00), together with interest, costs and attorney fees, to which the Plaintiff is deemed to be entitled.

Respectfully submitted,

MORGAN & MEYERS, PLC


/s/ Courtney E. Morgan, Jr. (P29137)
Courtney E. Morgan, Jr. (P29137)
Eric J. Rosenberg (P75782)
Attorneys for Plaintiff
 3200 Greenfield, Suite 260
Dearborn, MI 48120-1802
(313) 961-0130
cmorgan@morganmeyers.com
ejr@morganmeyers.com

DATED:  May 21, 2014

20

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DR. WILLIAM L. MILLER and
JANET G. MILLER,

                Plaintiffs,

-vs-

                                 Case No. 14-
                                 HON.

THOMAS BLASKE and
BLASKE & BLASKE, P.L.C.

                                 Magistrate

                Defendants.
_____/

COURTNEY E. MORGAN, JR. (P29137)
ERIC J. ROSENBERG (P75782)
Morgan & Meyers, PLC
Attorney for Plaintiffs
3200 Greenfield, Ste. 260
Dearborn, MI 48120
(313) 961-0130 / FAX: (313) 961-8178
cmorgan@morganmeyers.com
ejr@morganmeyers.com
_____/

**<u>DEMAND FOR JURY TRIAL</u>**

      NOW COME the above-captioned Plaintiffs, by and through their attorneys

MORGAN & MEYERS, PLC, and hereby demand a jury trial in the above cause

of action.

                        Respectfully submitted,

                        MORGAN & MEYERS, PLC

/s/ Courtney E. Morgan, Jr. (P29137)
Courtney E. Morgan, Jr. (P29137)
Eric J. Rosenberg (P75782)
Attorneys for Plaintiff
 3200 Greenfield, Suite 260
Dearborn, MI 48120-1802
(313) 961-0130
cmorgan@morganmeyers.com
ejr@morganmeyers.com

DATED:  May 21, 2014